**MOFFER v. JONES et al.**

No. 7378—Opinion Filed Jan. 8, 1918.

(169 Okla. 652.)

(Syllabus.)

**1. Indians—Allotments—Descent and Distribution.**

Sections 13 and 21 of the Enabling Act (Act Cong. June 16, 1906, c. 3335, 34 Stat. 267), and section 2 of article 25 of the Constitution repealed that part of section 6 of the Supplemental Agreement (Act Cong. June 30, 1902, c. 1323, 32 Stat. 501), providing that the descent and distribution of lands and money provided for by act of Congress approved March 1, 1901 (31 Stat. 861, c. 676), should be in accordance with chapter 49, Mansfield's Digest of the Statutes of Arkansas and substituted therefor the laws of the territory of Oklahoma thus extended to and put in force throughout the state, leaving in force the two provisos contained in section 6, which survived and operated upon such laws so as to limit the same to the extent that only citizens of the Creek Nation and their Creek descendants could inherit lands of the Creek Nation, and that if there be no person of Creek descent, then the inheritance should go to noncitizen heirs in the order named in the laws of Oklahoma.

**2. Judgment — "Collateral Attack" — What Constitutes.**

Where plaintiff brought an action to establish his title to certain lands and to set aside a guardian's deed which had been executed thereto, held that proceeding was a collateral attack upon the probate proceeding in which such deed was executed.

**3. Same—Scope of Inquiry.**

In a collateral attack upon probate proceedings in the county court, the scope of the inquiry is confined to the question whether the county court had jurisdiction of such proceedings, and its orders will not be held void for errors or irregularities occurring during the progress of the proceeding.

**4. Indians—Guardian's Deed—Approval of Secretary of Interior.**

The approval of the Secretary of the Interior was not necessary to the validity of a guardian's deed to the interest of a minor in the lands of his full-blood mother executed October 10, 1911, where the mother died about February 21, 1911, and where it does not appear that the minor was a full-blood.

**5. Evidence—Judicial Notice—Presumption—Degree of Indian Blood.**

This court will not take judicial knowledge of the degree of Indian blood possessed by a minor Creek Indian, and will not presume that said minor is of such degree of Indian blood as to render his conveyance of lands inherited by him subject to the operation of section 9, Act Cong. May 27, 1908, c. 199, 35 Stat. 315, which provides that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's lands, and requires the conveyances of any interest of a full-blood Indian heir in such land to be approved by the court having jurisdiction of the settlement of the estate of the deceased allottee.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Wilson Moffer, a minor, by Samuel G. Cumberledge, his next friend, against Bernard B. Jones, the Gypsy Oil Company, and others. Judgment for defendants, and plaintiff brings error. Affirmed.

J. B. Campbell, Thos. H. Owen, and J. C. Stone, for plaintiff in error.

James B. Diggs, Henry McGraw, Rush Greenslade, Harry H. Rogers, and J. E. Thrift, for defendants in error.

HARDY, J. Wilson Moffer, a minor, by next friend, commenced this action to establish his title to 160 acres of land, and to set aside a deed which had been executed thereto by his legal guardian in certain probate proceedings theretofore had in the county court of McIntosh county. The petition alleged that the lands had been allotted to Eliza Moffer, nee Lowe, a full-blood Creek citizen, who died intestate about February 21, 1911, leaving her surviving Waitie Moffer, her husband, and her two children, Wilson Moffer, the plaintiff, and Mary Moffer; that Mary Moffer was born subsequent to March 4, 1906, and died about June 24, 1911, leaving surviving her her father, Waitie Moffer, and plaintiff and leaving no other possible heir or claimant. The petition further sets out the probate proceedings in which the guardian's deed was executed, and alleges that said proceedings were void because the petition for the sale of said land was insufficient in various particulars, and because the lands were sold for less than 90 per cent. of the appraised value, as required by law, and because said guardian's deed had not been approved by the Secretary of the Interior, as required by section 22 of the act of Congress approved April 26, 1906 (34 Stat. 145, c. 1876). It was further alleged that said lands had been developed for oil and gas purposes, and that some of defendants had taken many thousands of barrels of oil therefrom and sold the same, and damages were prayed in the sum of $250.000.

The plaintiff contends that he was the owner in fee of the entire estate in and to said lands, and in support of this contention argues that the laws of descent and distribution as contained in Mansfield's digest of the Statutes of Arkansas, as extended to and put in force in the Indian Territory, and as limited by the first proviso of section 6 of the Supplemental Creek Agreement, and as further limited by the second proviso of section 9 of the act of Congress of May 27, 1908, governed the first devolution of allotments of members of the Creek Nation of Indians whose death occurred during the year 1911. Defendants contend that the laws of Oklahoma Territory which were extended over and put in force throughout the state by virtue of the Enabling Act and of the Constitution prescribed the manner by which said lands should descend, except as limited by the proviso to section 6 of the Supplemental Creek Treaty. It is conceded by counsel that if plaintiff's contention be correct, he takes the entire estate, while if the contention of defendants be correct, the plaintiff would only take a two-thirds interest in the property in question. This question has been settled adversely to plaintiff's contention by the decision in Jefferson v. Cook, 53 Okla. 272, 155 Pac. 852, where it was held that sections 13 and 21, of the Enabling Act and section 2 of article 25 of the Constitution repealed that part of section 6 of the Supplemental Creek Agreement providing that the descent and distribution of lands and money provided for by act of Congress, approved March 1, 1901, should be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, and substituted therefor the laws of the territory of Oklahoma, thus extended to and put in force throughout the state, leaving in force the two provisos contained in section 6, which survived and operated as such upon the laws extended to the extent of limiting the same so that only citizens of the Creek Nation, male and female and their Creek descendants, might inherit lands of the Creek Nation, and that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance should go to non-citizen heirs in the order named in the laws of the state of Oklahoma. This rule was adhered to in the case of Thompson v. Cornelius, 53 Okla. 85, 155 Pac. 602. From which it follows that plaintiff took only a two-thirds interest in said allotment.

The extent of the inquiry as to the validity of the probate proceedings in the county court of McIntosh county which resulted in the guardian's sale of said lands depends upon the nature of this proceeding. The trial court did not sit as a reviewing court to determine whether errors had been committed in the probate proceedings, nor does this court sit in that capacity, but, on the contrary, it seems clear that this is a collateral attack upon the proceedings of the county court. Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433; Spade v. Morton, 28 Okla. 384, 114 Pac. 724; Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372; Rice v. Theimer, 45 Okla. 618, 146 Pac. 702; Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090; Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184: Scott v. Abraham, 60 Okla. 10, 159 Pac. 270; Cowan v. Hubbard, 50 Okla. 671, 151 Pac. 678. The county court in the exercise of its probate jurisdiction is a court of general jurisdiction, and its judgment and proceedings are entitled to like presumptions accorded to that of the district court. Section 6190, Rev. Laws 1910; Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920; Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090; Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184. The attack upon said proceedings being collateral, the only question which we can inquire into is whether the county court of McIntosh county had jurisdiction of said proceedings and had power therein to make a valid order for the sale of said property. If it did, and a sale was made in pursuance thereof and afterwards confirmed, the title of the minor to said lands has been divested, and that sale cannot be set aside in this proceeding for errors or irregularities occurring during the progress of the probate proceedings. In order for plaintiff to prevail he must establish that the court exceeded its jurisdiction, or that there was a want of jurisdiction, to act. The distinction between what is requisite to authorize the court to act at all, and that which is necessary to sustain its action in a particular manner, must not be lost sight of, because it is only those matters which render the proceedings void that are available here. Jurisdiction has been defined by the Supreme Court of the United States in Grignon Lessees v. Astor, 2 How. 319, 11 L. Ed. 283, where the court said:

"The power to hear and determine a cause is jurisdiction. It is coram judice whenever a cause is presented which brings this power into action; if the petitioner presents such a case in his petition, that on a demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction; whether on an answer denying and putting in issue the allegations of the peti-

tion the petitioner makes out his case, is the exercise of jurisdiction, conferred by the filing a petition containing all the requisites, and in the manner required by law."

This court in Antene v. Jenson et al., 47 Okla. 352, 148 Pac. 727, defined jurisdiction thus:

"Jurisdiction is * * * the power of courts and the judicial officers to take cognizance of and to hear and determine the subject-matter in controversy between parties to a proceeding pending, and to adjust or exercise judicial power over them."

If a petition containing sufficient allegations was filed, the county court of McIntosh county obtained jurisdiction of said proceedings, and had authority to order a sale of the lands of plaintiff. It is not questioned that the guardian was regularly appointed, qualified, and acting. In this view of the case, the determining question is whether the petition for the sale of said lands contained sufficient allegations to confer jurisdiction upon that court to order the sale. It is conceded by counsel for plaintiff that the petition to sell real estate of a minor is that which gives the court jurisdiction of the special proceedings to sell. The material parts of the petition of the guardian for the sale of said lands are as follows:

"Comes Sulloly Jones as the guardian of Wilson Moffer, a minor, and a resident of McIntosh county, Oklahoma, and shows to the court the condition of the estate of the above-named ward, to wit: Nothing. The personal property of said ward consists of nothing, of the approximate value of nothing. That the annual income therefrom is approximately nothing. That said ward owns the following described real estate, of the approximate value of $——, to wit: Southwest quarter of the northwest quarter and the west half of the southwest quarter and the northwest quarter of the northwest quarter of section ten (10) township seventeen (17) north, range seven (7) east, containing 160 acres, the inherited land of Eliza Moffer, deceased, Roll No. 4571. That the annual income therefrom is approximately nothing. That said real estate is incumbered to the amount of nothing, with an annual interest charge of nothing. That the annual expense chargeable against the estate of said ward for maintenance and education is approximately $100. That it is necessary that the hereinafter described portion of said real estate should be sold for the following reasons, to wit: In order to provide funds for the education and support of the said minor, and to use the balance of said money, if any, investing it or loaning it out at interest so as to provide an immediate income for the said minor. That the next of kin and persons interested in the estate

of said ward, together with their respective places of residence, are as follows: Waitie Moffer, the father of the said minor, post office, Mellette, Okla., Wherefore petitioner prays the court that upon hearing had hereon he be authorized to sell all of the inherited land from Eliza Moffer, above described in said petition, of said real estate, at public or private sale as shall be deemed most beneficial and for the best interest of said ward."

Section 6557, Rev. Laws 1910, relating to the petition of the guardian to sell his ward's real estate, provides:

"To obtain an order for such sale, the guardian must present to the county court of the county in which he was appointed guardian, a verified petition therefor, setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale."

In Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372, it was said, referring to this section of the statute:

"This statute requires that the petition set forth: (1) the condition of the estate; (2) the facts and circumstances tending to show the expediency or necessity for such sale. The petition in the instant case shows that plaintiffs in error have no personal property, but that they own certain real estate described in said petition, and that they are dependent upon the income of said estate for their maintenance and education, and that the income derived from said estate is insufficient for the proper maintenance and education of said ward; that each of the wards is of scholastic age, and that the income derived from said land is insufficient to educate them properly; that said lands were inherited from their father. The petition for the sale of real estate of wards by a guardian is required to state the purpose for which the sale is asked (Ryder v. Flanders, 30 Mich. 336; Bunce v. Bunce et al., 59 Iowa, 533, 13 N. W. 705; 21 Cyc. 127); and we think the petition in this case is sufficient. It states that the sale is necessary in order to educate and maintain properly said minors."

A guardian's petition for the sale of lands of his ward was under review in Cowan v. Hubbard, 50 Okla. 671, 151 Pac. 678, where it was said:

"The petition complained of was filed in that court, alleging the fact that the ward had certain real estate in the county, the fact that he was of scholastic age, that he had no other property, that he was predisposed to consumption, and that it was necessary for the preservation of his health that he be removed to a more healthful climate, and that it was necessary to sell the

lands in controversy for his benefit and for his maintenance and education."

And this petition was held sufficient upon collateral attack.

The petition in the case at bar is substantially the same as that in Sockey v. Winstock, and shows that plaintiff whose lands were to be sold had no personal property; that he owned certain real estate described which was inherited from his mother; that he received no income therefrom; that the charge against his estate for maintenance, education, and support was approximately $100 per annum; that it was necessary to sell said real estate to provide funds for the education, maintenance, and support of said minor, and to use balance of the money in profitable investments. This petition states the condition of the estate, and alleges facts and circumstances tending to show both the necessity and expediency of a sale, and was in substantial compliance with the requirements of section 6557 of Rev. Laws 1910.

Nor was the petition fatally defective because it did not contain the allegation that said minor was the owner of his personal allotment or from whom the minor inherited the land in question or set out the minor's interest therein. The statutes under consideration do not require such allegations. They would be perfectly proper, and their truth might have an important bearing upon the question of whether a sale should be made, but a sale having been ordered. the necessity therefor has been adjudicated. It is also contended that the sale was void because the lands were sold for less than 90 per cent. of the appraised value thereof, in violation of section 6384, Rev. Laws 1910. The appraisers valued the land in question at the sum of $400, and fixed the value of the minor's two-thirds interest at $266.67, which was the sum bid, being the full appraised value thereof. The sale was of the entire interest of the minor. It is so described in the petition and in the various steps in the proceeding, and therefore the contention of plaintiff is incorrect in view of our holding that he only took a two-thirds interest in said property.

A proceeding by a guardian for the sale of lands belonging to his ward is not an adversary proceeding, but is rather a proceeding in rem, carried on by and in the interest of the ward through his legal representative. Eaves v. Mullen, supra; Dewalt v. Cline, 35 Okla. 197, 128 Pac. 121. The conveyance was not governed by section 22 of the act of Congress of April 26, 1906, and it was not necessary by reason of said section that the deed be approved by the Secretary of the Interior. MaHarry v. Eatman, 29 Okla. 46, 116 Pac. 935. Neither can plaintiff's contention that said sale was void because the deed was not approved by the court having jurisdiction of the settlement of the estate of the deceased allottee, as required by section 9 of the act of Congress approved May 27, 1908, be sustained. Assuming, without deciding, that said section requires the approval of deeds executed by full-blood Indian heirs to the lands of any deceased allottee, the petition in this case contains no allegation that plaintiff was a full-blood heir of Eliza Moffer. The petition alleges that the deceased was a full-blood Creek citizen, and that plaintiff also owned an allotment, but this would not require an inference that plaintiff was a full-blood, and while we are to construe the actual allegations and averments of all pleadings so that substantial justice may be done between the parties, this rule does not require that essential averments lacking in pleadings shall be construed into them, or that a necessary averment be supplied by inference, drawn from other facts, unless such averment must logically and necessarily be inferred therefrom. Weatherly v. Sawyer, 63 Okla. 155, 163 Pac. 717.

Assuming plaintiff's contention to be true, in order for said section to be applicable it must be made to appear that plaintiff was a full-blood heir, coming within the terms of said section, and the petition not containing that allegation, we will not take judicial knowledge of the degree of Indian blood possessed by him, and will not presume, in the absence of proof, that plaintiff was of such a degree of Indian blood as to render his conveyance of the land in question subject to the operation of said section. Mullen v. Howard, 43 Okla. 531, 143 Pac. 659; Ball v. Dancer, 44 Okla. 114, 143 Pac. 855; Bettes v. Brower (D.C.) 184 Fed. 342.

The judgment is affirmed.

All the Justices concur, except TURNER, J., absent. OWEN, J., disqualified.